UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
PALM BEACH DIVISION
Case No. 9:14-cv-80229 GAYLES/TURNOFF

FAUSTA SANTOS AGUILAR LOPEZ
("Aguilar") an individual,

                    Plaintiff

v.

GREENACRE FARMER'S MARKET, INC.
("Greenacre"), Florida company, and JOE
DEFEO ("DeFeo"), an individual,

_____ Defendants. _____/

### DEFENDANTS' MOTION IN LIMINE TO PRECLUDE (A) PLAINTIFF'S PSYCHOLOGICAL REPORT FROM BEING ADMITTED INTO EVIDENCE, (B) PLAINTIFF'S EXPERT TO TESTIFY AT TRIAL, (C) PLAINTIFF FROM ASSERTING ANY EMOTIONAL AND MENTAL DAMAGES, AND (D) PLAINTIFF FROM ADMITTING ANY MEDICAL TESTIMONY OR OTHER EVIDENCE THAT SHE INCURRED ANY PHYSICAL INJURY AS A RESULT OF DEFENDANTS

Defendants, GREENACRE FARMER'S MARKET, INC. and JOE DEFEO, hereby file

their Motion in Limine.  In support of this Motion, Defendants state:

### Plaintiff's Expert Report Fails to Comply with Fed. R. Civ. P. 26(a)(2)(B)

Pursuant to Rule 26(a)(2)(B), Plaintiff's expert report fails to comply with Fed. R. Civ. P.

26(a)(2)(B).  Specifically, Rule 26(a)(2)(B) requires that a report contain:

(i)     a complete statement of all opinions the witness will express and the basis and reasons for them;

(ii)    the facts or data considered by the witness in forming them;

(iii)   any exhibits that will be used to summarize or support them;

(iv)   the witness's qualifications, including a list of all publications authored in the previous 10 years;

Case No. 9:14-cv-80229-GAYLES/TURNOFF
Defendants' Greenacre Farmer's Market, Inc.'s
and Joe DeFeo's Motion in Limine
Page 2

      (v)     a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

      (vi)    a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B) (2014).

Plaintiff's expert report does not contain a complete statement of her opinions as required under Rule 26(a)(2)(B)(i).  Plaintiff's expert report simply "provide[s] diagnostic impressions and recommendations…" *See* Plaintiff's Expert Report, p.6, attached as Exhibit **A**.  Furthermore, Plaintiff's expert report does not contain the witness's qualifications, including a list of all publications authored, if any, a list of all cases which she has testified as an expert at trial or by deposition, or a statement of the compensation to be paid for the study and testimony in the case as required under Rule 26(a)(2)(B)(iv), (v) and (vi).  *Id.*  Accordingly, plaintiff's expert report should be excluded.

### Plaintiff's Expert Should Be Precluded from Testifying and Any Emotional or Mental Damages Should Be Excluded from Trial

Plaintiff's expert should be precluded from testifying because plaintiff failed to sign and refuses to sign the Women in Distress of Broward County, Inc., Jim & Jan Moran Family Center medical form in order for plaintiff's records to be released to undersigned counsel[1].  *See also* correspondence, dated July 29, 2014, between undersigned counsel and plaintiff's counsel attached as Exhibit **B**.  Plaintiff has placed her mental and emotional condition at issue and accordingly, such information is necessary.  Specifically, plaintiff alleges in her Complaint that

---

[1] While plaintiff signed the appropriate HIPAA authorization form, the Women in Distress of Broward County, Inc. medical provider requires that its patients' execute its own authorization form.  See correspondence received from Women in Distress of Broward County, Inc., dated July 7, 2014, attached hereto as Exhibit **C**.

Case No. 9:14-cv-80229-GAYLES/TURNOFF
Defendants' Greenacre Farmer's Market, Inc.'s
and Joe DeFeo's Motion in Limine
Page 3

she has suffered extreme emotional distress and pain and severe and extreme mental anguish as a result of Defendants' alleged harassment.   Further, she has brought a separate claim of intentional infliction of emotional distress against Defendants.   Compl., p.6.

Furthermore, during the psychological evaluation of plaintiff by undersigned counsel's expert, Dr. Christopher J. Fichera, Ph.D., Dr. Fichera "expressed a desire to speak with [plaintiff's] therapist about [plaintiff's] situation … Ms. Lopez refused to sign a release of information form … it was explained to her that [Dr. Fichera] would find it helpful to speak to her therapist … she nonetheless declined to sign the release form … [plaintiff's] therapist was unable to be interviewed …"  *See* Defendants' Expert Report, attached hereto as Exhibit **D**. Moreover,  plaintiff appeared uncooperative during the evaluation of plaintiff by Defendant's expert, Dr. Fichera: "[A]n attempt was made to administer the Minnesota Multiphasic Personality Inventory … However, due to the [plaintiff's] reported significant problems with reading, secondary to her limited education, she was unable to understand the Spanish version of this test. Even simple words on that test that were explained to her were unable to be understood by her. For this reason, the administration of this instrument was unable to be completed." *Id.*, p.3.  Yet, during the psychological evaluation with her expert, Dr. Tolbert, she appeared to be able to understand the evaluation and was cooperative.  Plaintiff's Expert Report, Exhibit **A**.

Accordingly, as plaintiff has failed to produce information regarding her mental and emotional condition and failed to cooperate with Defendant's expert, her expert should be precluded from testifying at trial and any such evidence related to her alleged emotional and mental damages should be excluded.

Case No. 9:14-cv-80229-GAYLES/TURNOFF
Defendants' Greenacre Farmer's Market, Inc.'s
and Joe DeFeo's Motion in Limine
Page 4

## Any Medical Testimony or Other Evidence That Plaintiff Allegedly Incurred Physical Injury as a Result of Defendants Should be Excluded

Plaintiff has failed to produce any documentation or otherwise to support any claim that she has incurred any physical injury as a result of Defendants. Accordingly, any such testimony or documentation or otherwise should be precluded from evidence in this matter.

WHEREFORE, Defendants respectfully request that this Honorable Court enter an Order precluding (a) Plaintiff's Psychological Report to Be Admitted into Evidence, (b) Plaintiff's Expert to Testify at Trial, (c) Plaintiff from Asserting Any Emotional and Mental Damages, and (d) Plaintiff from Admitting Any Medical Testimony or Other Evidence that She Allegedly Incurred Physical Injury as a Result of Defendants, and for such other and further relief as this Court deems just and proper.

Dated: August 4, 2014

Respectfully submitted,

/s/ Robert G. Haile, Jr.
Robert G. Haile, Jr., Esq. (FBN 292796)
Email: rhaile@haileshaw.com
Antoinette Theodossakos, Esq. (FBN 178608)
Email: atheodossakos@haileshaw.com
**HAILE, SHAW & PFAFFENBERGER, P.A.**
660 U.S. Highway One, Third Floor
North Palm Beach, FL 33408
Phone: (561) 627-8100
Fax: (561) 622-7603
*Counsel for Defendants, Greenacre Farmer's Market, Inc. and Joe Defeo*

Case No. 9:14-cv-80229-GAYLES/TURNOFF
Defendants' Greenacre Farmer's Market, Inc.'s
and Joe DeFeo's Motion in Limine
Page 5

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 4th day of August, 2014, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notice of Electronic filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notices of Electronic Filing.

/s/ Robert G. Haile, Jr.
Robert G. Haile, Jr., Esq. (FBN 292796)
Email:  rhaile@haileshaw.com
Antoinette Theodossakos, Esq. (FBN 178608)
Email: atheodossakos@haileshaw.com
**HAILE, SHAW & PFAFFENBERGER, P.A.**
660 U.S. Highway One, Third Floor
North Palm Beach, FL  33408
Phone: (561) 627-8100
Fax: (561) 622-7603
*Counsel for Defendants, Greenacre Farmer's
Market, Inc. and Joe Defeo*

Case No. 9:14-cv-80229-GAYLES/TURNOFF
Defendants' Greenacre Farmer's Market, Inc.'s
and Joe DeFeo's Motion in Limine
Page 6

## SERVICE LIST

**Fausta Santos Aguilar Lopez v. Greenacre Farmer's Market, Inc. and Joe DeFeo**
**CASE NO. 14-80229-CIV-MIDDLEBROOKS/BRANNON**
**United States District Court, Southern District of Florida**

Miguel Armenteros
Miguel@pbyalaw.com
PERLMAN, BAJANDAS, YEVOLI
& ALBRIGHT, P.L.
1000 Brickell Avenue, Suite 600
Miami, FL 33131
Telephone:  (305) 377-0086
Facsimile:  (305) 377-0781
**Method of Service:  CM/ECF**
*Attorneys for Plaintiff*



PSYCHOLOGICALCENTER
for Expert Evaluations, Inc.

## PSYCHOLOGICAL EVALUATION

### IDENTIFYING INFORMATION

| | |
|---|---|
| **Defendant Name:** | Fausta Santos Aguilar Lopez |
| **Sex:** | Female |
| **Marital Status:** | Separated |
| **DOB:** | 10/14/1979 |
| **Race and Ethnicity:** | Hispanic |
| **Date of Evaluation:** | 7/11/14 |
| **Date of Report:** | |
| **Examiner:** | Kristin M. Tolbert, Psy.D., Licensed Psychologist |

### REFERRAL REASON AND SERVICE INFORMATION

Mrs. Fausta Aguilar was referred by her attorney, Mr. Miguel Armenteros, in order to undergo a comprehensive psychological evaluation. The evaluation was to include diagnostic impressions, an overview of her functional capacities and limitations, and treatment recommendations if deemed necessary.

Mrs. Aguilar was evaluated by Melissa Cordero and Dr. Kristin Tolbert at the Psychological Center for Expert Evaluations, Inc. on July 11, 2014. Prior to beginning the evaluation the nature of the evaluation was discussed as well as the limits to confidentiality. Mrs. Aguilar stated she understood the terms, was willing to participate and was capable of paraphrasing the terms back.

Due to possible different Spanish dialects, Mrs. Fausta Aguilar was informed and asked to interrupt when she did not understand the clinicians or translations.

### SOURCES OF INFORMATION

Direct Examination
Clinical Interview with Melissa Cordero (7/11/14, 3 hours)
Mental Status Evaluation (7/11/14)
Clinical Interview with Social Worker Melissa Cordero Translating for Dr. Kristin Tolbert
    (7/11/14, 1 hour)
Posttraumatic Stress Questionnaire (PTSQ) (7/11/14)
Post Traumatic Stress Diagnostic Scale (PSDS) (7/11/14)
Beck Depression Inventory-II (BDI-II) (7/11/14)
Miller Forensic Assessment of Symptoms Test (Malingering Assessment) (07/11/14)



EXHIBIT
A

Records Reviewed

| | |
|---|---|
| Women in Distress of Broward County, Inc. – Letter from Luz M. Ramirez | 9/22/2010 |
| Greenacres Farmers Market – Employment Application | |
| Work Schedule by Week (Completed by Hand) | |
| Form W-4 (2012), Fausta Aguilar Lopez | 2/10/2012 |
| Form W-2 (2012), Aguilar Lopez | |
| Greenacres Farmers Market, Inc. – Payroll Summary | 1/10 – 6/13 |
| Greenacres Farmers Market, Inc. – Transactions by Payroll Item | 1/12 – 6/13 |
| Greenacres Farmers Market, Inc. – Payroll Stubs | 2/12 – 3/13 |
| Wage Statement – Florida Department of Financial Services – Division… | 3/1/2013 |
| Division of Victim Services – Informed Consent for Therapy Services | 3/6/2013 |
| U.S. Postal Service – Certified Mail Receipts | 4/3, 4/4/2013 |
| Office of Equal Opportunity – Letter from Pamela Guerrier | 4/25/2013 |
| Petition for Workers' Compensation Benefits | 5/21/2013 |
| Notice of Denial – Florida Department of Financial Services – Division… | 5/30/2013 |
| Florida Workers' Compensation Uniform Medical Treatment/Status… | 6/3/2013 |
| Response to Petition for Benefits | 6/5/2013 |
| Greenacres Farmers Market, Inc. – Employee Contact List | 6/27/2013 |
| Notice of Denial – Florida Department of Financial Services – Division… | 6/28/2013 |
| Notice of Dismissal | 10/11/2013 |
| Order Under Section 440.20(11)(c)(d)&(e) Florida Statutes (2001) | 10/29/2013 |
| U.S. Equal Employment Opportunity Commission – Notice of Right to Sue | 11/21/2013 |
| Florida Commission on Human Relations – Charge of Discrimination (concerning 2007 – 2013) | |
| Palm Beach County Victim Services – Therapy Intake Form | 3/6/2014 |
| Defendants' Answer and Affirmative Defenses to Plaintiff's Complaint | 3/19/2014 |
| Palm Beach County Victim Services – Therapy Treatment Plan | 6/2/2014 |
| Certificate of Service | 6/9/2014 |
| Plaintiff's Notice of Serving Her Verified Answers to Defendant DeFeo's … | 6/9/2014 |
| Plaintiff's Answers to Defendant DeFeo's First Set of Interrogatories | 6/9/2014 |

## **Informant**
The information included in the psychosocial history was provided by Ms. Aguilar and the above listed medical records obtained from healthcare providers. Ms. Aguilar was deemed to be a very reliable historian and her accounts of the events that took place were repeatedly verified by the available medical records.

## **RELEVANT HISTORY**

Developmental and Family History
Mrs. Aguilar reports that she was born in Guatemala, and eventually moved to the United States in 2003. She was raised by both of her biological parents and stated that she is one of 11 children in the family. Mrs. Aguilar indicated that she has 9 brothers and 1 sister; however, only one of whom lives in Florida.

Social History

urrently, Fausta lives with her oldest son, Bayron, who is 15 years old, in a trailer park community. Additionally, Fausta reported having 2 other children. Bayron is the oldest. Brendy who is 14, and Egnner who is the youngest is 12. Brendy and Egnner live in Guatemala with her parents. She stated that they speak 2-3 times a week over the phone. She added that she works hard to have the ability to send money to her children in Guatemala as well as to support her son Bayron to give him a healthy life.

Fausta states that although she is legally married, she will be proceeding to divorce her husband. She continued to explain that her husband was physically and sexually abusive to her almost every day of their marriage. Furthermore, he left her to come to the United States in 2002 without her and refused to send money to her and the children. Later in 2002, her husband reportedly threatened to kill her if she did not make an attempt to come to the United States with him. Her husband is currently living in Guatemala, but hasn't spoken to him in over a year.

According to Fausta, she was born without complications. Developmental milestones were generally met within normal time frames.

Educational and Occupational History
Fausta reported never attending or completing school, but is able to read and write in her native language. She reported having spent her entire adult life working to provide for her children, as her husband never gave financial support.

She began working in the United States for Greenacres Market Place in 2003 until March of 2013, which is the location of alleged trauma. Her position was as a stock clerk, which required her to perform general labor duties. She left Greenacres Market Place for a month, but had to return because she reported having "flashbacks" at a Thai Restaurant in which she attempted work at for one day.

The client stated that she could not remember the name of the Thai Restaurant, therefore, she called her friend who used to give her rides to the location. She stated that her friend remembered the location being on Military in West Palm Beach, FL. After searching the internet, this clinician found A-1 Thai on Military in West Palm Beach. This clinician then asked Fausta if the named seemed familiar and she replied yes, that it was the one she was at. This clinician called the restaurant and spoke with the manager who stated he has never heard of anyone by Fausta's full name. This clinician explained that she may have worked for only a day or few hours because she had to leave urgently. The manager stated that they only employ "Thai people", never someone who only speaks Spanish. To add further measures, this clinician asked if in their restaurant they had a large walk-in cooler. The manager reported that they do not have a walk-in cooler, only large coolers with doors that are not walk-in.

Currently, Fausta reported working as a house cleaner with other women. She states that she works with the women a few times a week cleaning a large number of homes in order to financially support her children and housing.

Social History

Socially, Fausta reports having close friends and pastors at church that have been supporting her through her troubles. Additionally, she states that the church is a place where she can always go and be in peace.

Currently, Fausta states that she is dating someone but, she reports it is not serious. She explained that they go out to eat and spend time with one another, but it is nothing intimate. The male is 28 years-old and she reported meeting him at church.

Medical History
Fausta reported having head aches, neck aches, back aches, nausea, chest pressure, shortness of breath at times, trouble sleeping (actively sleeps 5-6 hours), lack of appetite, and frequent nausea due to the trauma that she has experienced from working at Greenacres Market. Furthermore, she states taking 2 pills a day for pain. When asked if the medications help with her pain, she said "no." She continued to voice her high levels of pain and frequent headaches that are a result of the alleged physical abuse, sexual abuse, and labor she was required to endure from working at Greenacres Market. When asked what physical labor caused the pain, she explained that she was required to bend and lift as well as carry heavy boxes filled with fruit as well. She continued to report that her boss got upset when the boxes were not fully filled with fruit when she carried them.

Surgical history is unremarkable. Fausta reported having numerous boxes fall on her head with force on numerous occasions. She described an incident in which a box fell on her head and she was knocked unconscious and taken to the hospital. She was unable to remember the name of the hospital that she was taken to for her injuries. Family medical history is unremarkable. There is no known history of learning disabilities, developmental disabilities.

Substance Abuse History
There is no reported substance abuse history

Legal History
Currently Fausta is involved with attorneys to gain workers compensation as well as an additional lump sum of money to compensate for emotional distress caused by physical, emotional, and sexual abuse. She explained that she has never been arrested, but called the police on March of 2013 to report the abuse she experienced at the Greenacres Market. She called the police after having a "terrifying" incident with an employee at work. According to Fausta, she called her attorney as she arrived to her home and her attorney instructed her to contact the police. She described the crying and fear she felt that day as she became tearful. She continued to report that once the police got there, they asked her a serious of questions, but she was unsure of whether or not they interviewed DeFeo.

It was noted in the police report from March 2013, that the police spoke with Fausta who was crying but, "not producing tears." Furthermore, the police interview DeFeo who was "genuinely shocked" at the allegations made by Fausta. Additionally, the police documented that DeFeo offered to allow the police to watch their surveillance camera footage for proof.

Mental Health History, Symptoms, Behaviors, and Treatment

Fausta stated having received therapy a few year ago to get treatment for when she was raped at the age of 8 by her brother-in-law. Currently, Fausta described symptoms of flashbacks of the incidents which occurred in Greenacres Martket, nightmares, shortness of breath, "tension" headaches, anxiety, and stress when thinking back to the physical and sexual abuse that occurred in Greenacres Market.

History of Trauma
Fausta reported being physically and sexually abused by her supervisor, "DeFeo" and her fellow employees on a daily basis at the Greenacres Farmer's Market. She explained DeFeo would grab her buttocks in an inappropriate and forceful manner in addition to touching her breasts. She added that because DeFeo did it, the other employees felt that it was appropriate or funny. The client became very tearful as she explained an incident which occurred in a room which was a large cooler where boxes of fruit were stored. She explained that she entered the cooler to get fruit from the boxes just as DeFeo entered the cooler behind her. She stated that he grabbed her arms and forcefully shoved her up against the wall as he began to remove his pants. She reported feeling as if he was going to rape her, because he began grabbing her vagina over her pants as he unbuttoned his pants. As she began to cry uncontrollably she explained that she was having flash backs about the time she was raped as an 8 year-old by her brother-in-law in a similar setting.

Fausta disclosed that she experienced the abuse and harassment at Greenacres Farmer's Market on a daily basis. She reported that DeFeo would say "You are my bitch" and would proceed to smack her buttocks or pull her hair in front of customers and other employees. She continued to describe that DeFeo would squeeze her buttocks so badly she would develop bruises around her back hip area. She added that because of the frequent bruising, she believes it has caused her permanent back injuries.

When asked what Fausta did to stop the abuse she was experiencing, she stated she would "pray to God" as she was unable to quit or lose her job, because she had the responsibility to pay for housing, food, and more for her children. She continued to report that she knew she would have a hard time finding employment if she quit, due to her inability to speak or understand English. She reported trying to train at a Thai Restaurant, but was unable to stay because she reported having flash backs of the attempted rape she experience by DeFeo.

Once Fausta was calmer, she described an incident which ocurred when she was 8 years-old and still living in Guatemala. She stated her mother sent her to take food to her brother-in-law at his place of employment. When she arrived, she stated that he grabbed her and forced her against the wall and raped her. She added that her brother-in-law threatened to kill her mother if she were to tell anyone what happened. When asked how she coped with this trauma, she replied stating that with the help of God, she was able to receive therapy in Fort Lauderdale in 2010.

Currently, Fausta is experiencing frequent flashbacks, nightmares regarding the incidents that occurred at Greenacres Market, lack of sleep, lack of appetite, anxiety, nausea at the thought of the incidents, as well as avoidance of things or places that may remind her of the incidents that occurred.

Activities of Daily Living and Social Functioning

Ms. Aguilar is able to complete activities of daily living which occur in isolation or, if necessary, in the company of other women. She is capable of completing domestic chores and maintaining the household, with exception to periods of time in which she is experiencing a depressive episode or has post traumatic stress disorder triggers. She does not navigate the community or travel independently due to a fear of panic attacks, triggers for posttraumatic stress disorder, and generalized anxiety. In terms of managing basic resources, she tries not to leave the home independently. Ms. Aguilar is able to socialize in the home, but is not involved with any affiliations such as a church or civic associations due to discomfort in social settings. With this said, the tasks that Ms. Aguilar completes independently often require a greater than average amount of time to complete, or multiple attempts to complete them properly.

As previously stated, Ms. Aguilar's psychological symptoms have caused severe impairment in her social functioning. She indicated that she does not leave the home by herself due to fear of someone attempting to begin a simple conversation with her which could trigger her posttraumatic stress disorder or cause a panic attack.

Concentration, Persistence, and Pace
Ms. Aguilar showed severely marked limitations with regard to pace and it would be highly unlikely that she could complete a normal work day without interruptions from psychologically based symptoms. This is evidenced by her tendency to provide extremely detailed answers to questions, a slow pace of speech, and very lengthy pauses as she gathers her thoughts

Furthermore, although Ms. Aguilar's intellectual capabilities appeared to fall within the average range of functioning, she had an extremely difficult time maintaining concentration and frequently lost sight of the questions asked of her. She also tended to make frequent mistakes in simple paperwork (i.e., more than once she transposed items and wrote her birth date instead of the present date on the signature).


**CURRENT CLINICAL PRESENTATION/BEHAVIORAL OBSERVATIONS**

Fausta is a 35-year-old Hispanic female. The client appeared guarded as evidenced by her crossed arms and tense posture. The client spoke softly and passively.


**SUMMARY**
*The results of this evaluation are intended to provide diagnostic impressions and recommendations based on the best clinical judgment of this evaluator. Other human error is always a possible factor in the interpretation of data for psychological reports; efforts remain to reduce these factors.*

*Thank you for referring Fausta  to the Psychological Center for Expert Evaluations, Inc. If there are any additional questions please do not hesitate to contact me at (561) 429-2140.*

Respectfully,

_____
Dr. Kristin M. Tolbert
Licensed Psychologist, # PY846

-----Original Message-----
From: Miguel Armenteros [mailto:miguel@pbyalaw.com]
Sent: Sunday, June 29, 2014 4:21 PM
To: Antoinette Theodossakos
Cc: Aralys Carmenate; Denise Landin
Subject: Re: Lopez v. Greenacre Farmers' Market et al.

Our position remains the same.

Sent from my iPhone

On Jun 29, 2014, at 1:57 PM, "Antoinette Theodossakos"
<atheodossakos@haileshaw.com<mailto:atheodossakos@haileshaw.com>> wrote:

As you are aware, after requesting that your client sign and return the HIPAA authorization form to us numerous times, we finally received same on June 24, 2014. Although we faxed said form to the below medical provider, we were advised by the medical provider on Thursday, June 26 that your office must contact them directly, so that they may forward their own form to your office for your client's signature in order for her records to be released to us. Your office advised us that you will not follow your client's medical provider's request.  Please confirm that this is still your client's position by no later than 5 pm, June 30, 2014<x-apple-data-detectors://4>.

WOMEN IN DISTRESS OF BROWARD COUNTY
DOMESTIC VIOLENCE CENTER
JIM AND JAN MORAN FAMILY CENTER
P.O. Box 676<x-apple-data-detectors://0> Ft. Lauderdale, Florida  33302<x-apple-data-detectors://0>


Antoinette Theodossakos, Esq.
Haile, Shaw & Pfaffenberger, P.A.
561-627-8100 (telephone)
561-622-7603 (facsimile)


Antoinette Theodossakos, Esq.
Haile, Shaw & Pfaffenberger, P.A.
660 U.S. Highway One, Third Floor
North Palm Beach, FL 33408
Telephone: (561) 627-8100
Facsimile: (561) 622-7603


EXHIBIT B

## WOMEN IN DISTRESS
### OF BROWARD COUNTY, INC.
JIM & JAN MORAN FAMILY CENTER

HOTLINE: 954-761-1133 • PHONE: 954-760-9800 • FAX: 954-832-9487 • P.O. BOX 50187, LIGHTHOUSE POINT, FL 33074

**EXECUTIVE COMMITTEE**

**Anjali Besley**
Board Chair
**Isabel Hebert**
1st Vice Chair
**Kathleen Grace**
2nd Vice Chair
**Phyllis Thomas**
Treasurer
**Cindy Basham**
Secretary
**Arlene Pecora**
Immediate Past Chair
**Mary Riedel**
President & CEO

**BOARD MEMBERS**

Kim Bentley
Andrea Bowden
Anne B. Chervony
Tami Clemenza-Wilson
Michael Farver
Howard Forman
Howard M. Gitten
Pauline Grant
Kathleen A. Grace
Capt. Janice Jordan
Karen Leikert
Kimberly Miller
Steve Pomeranz
Dr. Irving Rosenbaum
Dr. Lanalee Araba Sam
Katina Taylor

**HONORARY BOARD**
**MEMBER**

Janet A. Boyle
In Memoriam

July 7, 2014

Antoinette Theodossakos, Esq.
Haile Shaw & Pfaffenberger
North Palm Beach
660 US Highway One, 3rd Floor
North Palm Beach, Fl. 33408

RE: Fausta Santos Aguilar-Lopez – D.O.B.: 10/14/1979

Dear Attorney Theodossakos:

I am in receipt of your request for medical records regarding the above referenced individual.

Please be advised that pursuant to Florida Statutes 39.908, "Confidentiality of information received by department or domestic violence center" and 90.5036 "Domestic violence advocate-victim privilege" (attached):

> "Information about clients received by ... authorized persons employed by or volunteering services to a domestic violence center, through files, reports, inspection or otherwise, is confidential and exempt from the provisions of s. 119.07 (1)."

As we are a state certified domestic violence center, we can neither confirm nor deny the existence of any information pertaining to participants without the expressed written consent of the participant. Anyone seeking to authorize such release of information must complete an authorization form available only at Women In Distress 4700 S.W. 3rd Avenue, Deerfield Beach, Florida, 33064. Proper identification is required.

I hope you appreciate our confidentiality requirements in this matter.

Should you have any further questions, please me at 954-760-9800 ext.1033.

Respectfully,

Mary Riedel
President and CEO

Cc: Florida Statues





WWW.WOMENINDISTRESS.ORG • BROWARD COUNTY'S ONLY ~~~~~VE DOMESTIC VIOLENCE CENTER

Select Year:  2013 ▼   Go

# The 2013 Florida Statutes

Title VII                          Chapter 90                          View Entire Chapter
EVIDENCE                       EVIDENCE CODE

**90.5036    Domestic violence advocate-victim privilege.—**

(1)   For purposes of this section:

(a)   A "domestic violence center" is any public or private agency that offers assistance to victims of domestic violence, as defined in s. 741.28, and their families.

(b)   A "domestic violence advocate" means any employee or volunteer who has 30 hours of training in assisting victims of domestic violence and is an employee of or volunteer for a program for victims of domestic violence whose primary purpose is the rendering of advice, counseling, or assistance to victims of domestic violence.

(c)   A "victim" is a person who consults a domestic violence advocate for the purpose of securing advice, counseling, or assistance concerning a mental, physical, or emotional condition caused by an act of domestic violence, an alleged act of domestic violence, or an attempted act of domestic violence.

(d)   A communication between a domestic violence advocate and a victim is "confidential" if it relates to the incident of domestic violence for which the victim is seeking assistance and if it is not intended to be disclosed to third persons other than:

1.   Those persons present to further the interest of the victim in the consultation, assessment, or interview.

2.   Those persons to whom disclosure is reasonably necessary to accomplish the purpose for which the domestic violence advocate is consulted.

(2)   A victim has a privilege to refuse to disclose, and to prevent any other person from disclosing, a confidential communication made by the victim to a domestic violence advocate or any record made in the course of advising, counseling, or assisting the victim. The privilege applies to confidential communications made between the victim and the domestic violence advocate and to records of those communications only if the advocate is registered under s. 39.905 at the time the communication is made. This privilege includes any advice given by the domestic violence advocate in the course of that relationship.

(3)   The privilege may be claimed by:

(a)   The victim or the victim's attorney on behalf of the victim.

(b)   A guardian or conservator of the victim.

(c)   The personal representative of a deceased victim.

(d)   The domestic violence advocate, but only on behalf of the victim. The authority of a domestic violence advocate to claim the privilege is presumed in the absence of evidence to the contrary.

History.—s. 7, ch. 95-187; s. 127, ch. 98-403.

Copyright © 1995-2014 The Florida Legislature • Privacy Statement • Contact Us

Select Year:  2013 ▼   Go

# The 2013 Florida Statutes

<table>
<tr><td>Title V<br>JUDICIAL BRANCH</td><td>Chapter 39<br>PROCEEDINGS RELATING TO CHILDREN</td><td>View Entire Chapter</td></tr>
</table>

**39.908   Confidentiality of information received by department or domestic violence center.—**

(1)   Information about clients received by the department or by authorized persons employed by or volunteering services to a domestic violence center, through files, reports, inspection, or otherwise, is confidential and exempt from the provisions of s. 119.07(1). Information about the location of domestic violence centers and facilities is confidential and exempt from the provisions of s. 119.07(1).

(2)   Information about domestic violence center clients may not be disclosed without the written consent of the client to whom the information or records pertain. For the purpose of state law regarding searches and seizures, domestic violence centers shall be treated as private dwelling places. Information about a client or the location of a domestic violence center may be given by center staff or volunteers to law enforcement, firefighting, medical, or other personnel in the following circumstances:

(a)   To medical personnel in a medical emergency.

(b)   Upon a court order based upon an application by a law enforcement officer for a criminal arrest warrant which alleges that the individual sought to be arrested is located at the domestic violence shelter.

(c)   Upon a search warrant that specifies the individual or object of the search and alleges that the individual or object is located at the shelter.

(d)   To firefighting personnel in a fire emergency.

(e)   To any other person necessary to maintain the safety and health standards in the domestic violence shelter.

(f)   Information solely about the location of the domestic violence shelter may be given to those with whom the agency has an established business relationship.

(3)   The restriction on the disclosure or use of the information about domestic violence center clients does not apply to:

(a)   Communications from domestic violence shelter staff or volunteers to law enforcement officers when the information is directly related to a client's commission of a crime or threat to commit a crime on the premises of a domestic violence shelter; or

(b)   Reporting suspected abuse of a child or a vulnerable adult as required by law. However, when cooperating with protective investigation services staff, the domestic violence shelter staff and volunteers must protect the confidentiality of other clients at the domestic violence center.

**History.**—s. 6, ch. 78-281; s. 5, ch. 79-402; s. 7, ch. 84-343; s. 22, ch. 91-71; s. 33, ch. 94-134; s. 33, ch. 94-135; s. 277, ch. 96-406; s. 119, ch. 98-403.

**Note.**—Former s. 409.606; s. 415.608.

---

Copyright © 1995-2014 The Florida Legislature • Privacy Statement • Contact Us

# South Florida Psychology

Clinical Psychology          Forensic Psychology          Health Psychology          Neuropsychology

Christopher J. Fichera, Ph.D.                                                                 Lauren Thomas, Psy.D.
Sharon M. Theroux, Ph.D., ABPP

**EVALUATEE:** Fausta Santos Aguilar Lopez

**EVALUATOR:** Christopher J. Fichera, Ph.D.

**DATE OF EVALUATION:** 07/16/2014

**DATE OF REPORT:** 07/23/2014

**RE:** Lopez v. Greenacre Farmer's Market et al.

**REFERRAL:** Fausta Santos Aquilar Lopez (claimant) is a 35-year-old Hispanic female who was referred by attorney Robert Haile for a psychological evaluation in order to assist in evaluating her report of psychological symptoms secondary to alleged abuse at her former place of employment, Greenacre Farmer's Market. Ms. Lopez was seen for evaluation at the office of the undersigned in Boca Raton, Florida.

Ms. Lopez, whose first language is Spanish and who speaks very little English, was seen for evaluation with the assistance of a Spanish-speaking interpreter arranged for by the office of attorney, Robert Haile.

**NOTIFICATION:** Prior to the evaluation, Ms. Lopez was advised of the purpose of the evaluation, this examiner's status as an expert witness, the probable evaluation procedures, the limits on confidentiality, and the potential uses of the evaluation at subsequent stages of her case, including possible outcomes that might be influenced by the outcome of this evaluation. Ms. Lopez indicated that she understood the purpose and conditions of the evaluation, and agreed to participate in the evaluation.

**EVALUATION PROCEDURES:** In conducting the evaluation, the undersigned had available to him the following sources of information:

1. Engagement letter from the office of Haile, Shaw, and Pfaffenberger, P.A.
2. Officer Incident Report, March 11, 2013
3. Charge of Discrimination document, May 13, 2013
4. Petition for Worker's Compensation Benefits, 5/21/13
5. Department of Public Safety Palm Beach County Victim Services Therapy Intake Note, 3/6/14
6. Complaint to the Court, 3/12/14
7. Women In Distress Therapy Notes, 3/16/14 - 6/26/14
8. Clinical interview of Ms. Lopez at the office of the undersigned in Boca Raton, Florida, 7/16/14
9. Administration of the Test of Memory Malingering (TOMM), 7/16/14

7100 W. Camino Real, Suite 123          2717 E. Oakland Park Boulevard, Suite 103          831 Coral Ridge Dr.
Boca Raton, FL 33433                    Ft. Lauderdale, FL 33306                          Coral Springs, FL 33071
Ph 561-395-0243                         Ph 954-249-4448                                  Ph 561-395-0243
Fax 561-391-5040                        Fax 954-566-2037                                 Fax 561-391-5040


EXHIBIT
D

10. Administration of the Spanish version of the Minnesota Multiphasic Personality Inventory -- second edition (MMPI-2), attempted, 7/16/14

**NATURE OF CLAIM:** The claimant reports that as a result of physical, emotional, and sexual abuse on the part of her ex-employer she has suffered physical damage to her back, arms, legs, neck, and head. Further, she reports that she continues to suffer with extreme emotional pain, sleep loss, depression, and emotional distress.

**POLICE INVESTIGATION:** The police report dated March 11, 2013 indicates that the complainant reported that she was the subject of physical and sexual harassment by her employer at that time. The police report includes several various comments made by Ms. Lopez while being interviewed by responding officers on that day. Specifically, she reported that she did not have a boyfriend at that time, that her employer never touched her vaginal area, and that her employer never touched her underneath her clothing. She also advised police that there was a witness to the many incidents of abuse who could corroborate her story. However, during the interview of the aforementioned witness, the police report indicates that this person stated that he has never seen incidents such as those reported by the complainant and that she "tends to fabricate stories often for no reason." Further, the aforementioned witness reported that the complainant was in a relationship with a male at that time, contrary to what she told police. Further still, he reported that he has seen the complainant "flirting with male customers." Ultimately, the final disposition of the police investigation resulted in a finding that "There is no evidence to corroborate Ms. Lopez's allegations. This case is unfounded."

**CLINICAL INTERVIEW SUMMARY:**  Fausta Santos Aquilar Lopez is a 35-year-old Hispanic female who reported being born in Guatemala and who stated that she came to the United States in 2003. She reported that she was raised by her biological parents and that she is the 5th of 11 children, having 9 brothers and 1 sister. She reported that she stopped her education after the second grade "because I couldn't do the work and the teacher would hit us." She reported that she was married at age 19 and has been separated from her husband for 7 or 8 years. She stated that she has three children from her marriage, 12 and 15-year-old sons and a 13-year-old daughter. At the present time, she reports that she works part-time cleaning houses and resides in West Palm Beach with her 15-year-old son. She reported that her other children are living in Guatemala with her parents.

The claimant was asked about her history of psychiatric treatment. She reported that in 2010 "the immigration people took me because they noticed I wasn't right." When asked to elaborate on this, she stated that she was treated for eight months "because my husband was violent." She stated that this treatment took place on an outpatient basis and was necessitated because of depression related to her history of physical abuse at the hands of her husband. She stated that she is not certain of what diagnosis she was given and does not recall if she was prescribed any medications.

Ms. Lopez reported that she last received psychiatric treatment in 2011 "to get help from a psychologist to finish my recovery from living with my ex-husband." She went on to state that she was depressed at that time and that this treatment took place at an unknown facility in Fort Lauderdale on an outpatient basis. She stated that no medications were prescribed for her. At the present time, she reports that she is receiving psychological counseling "Because of my boss, I was relapsing." Ms. Lopez also reported that she was raped as a child by her ex-brother-in-law

and, as a result, she experienced nightmares of the rape until she was approximately age 30. She stated that the nightmares stopped after she began talking about it with a psychologist.

*Current Mental Status:* The claimant was seen for evaluation at the office of the undersigned. She was alert, coherent, and oriented to person, place, time, and situation. She correctly identified the current president of the United States, while stating that she does not know who the previous president was. She declined to attempt the serial 7's task, or to attempt 4/4 simple arithmetic equations. She performed poorly on 2/3 gross measures of abstract thinking and stated that she could recall 0/3 items after approximately 30 minutes. She became tearful at times during her evaluation when being asked about the law suit against her ex-employer. She reported depression without suicidal or homicidal thinking. She stated that she has been crying on a daily basis and has been having problems sleeping. She reported that her appetite has been nonproblematic. She reported that she has been having "many nightmares of my boss." She admitted to anxiety as well as panic attacks, with her last panic attack taking place approximately one week prior to her evaluation with this examiner. She reported mild forgetfulness, and her performance on a test of memory malingering (TOMM) does not suggest exaggeration of memory problems. She denied any auditory or visual hallucinations, and no overt evidence of psychotic processes was noted.  Although no formal measure of intellectual functioning was administered as part of the present evaluation, it is believed that the claimant is likely of low average to below average intelligence.

As part of the present evaluation, an attempt was made to administer the Minnesota Multiphasic Personality Inventory, Second Edition (MMPI-2). However, due to the defendant's reported significant problems with reading, secondary to her limited education, she was unable to understand the Spanish version of this test. Even simple words on that test that were explained to her were unable to be understood by her. For this reason, the administration of this instrument was unable to be completed.

Ms. Lopez reports a long, uncommonly traumatic history of victimization at the hands of various individuals including physical, emotional, and sexual abuse. These individuals include her ex-husband, ex-brother-in-law, and ex-boyfriend. She reports that her sister betrayed her and tells lies about her, her parents verbally and emotionally abuse her children, multiple coworkers are lying about her situation, her parents have brain washed her children, her father has physically assaulted her, her husband has raped her in front of their children, and, as a child, she was physically abused by siblings.

Ms. Lopez's Women in Distress Therapy Notes from 3/6/14-6/26/14 were reviewed by the undersigned. These notes indicate that the claimant was reporting a history of abuse both at her former place of employment, as well as at the hands of other individuals including her ex-husband and ex-brother-in-law. She also reported that she was betrayed by her sister who has told lies about her. Therapy focused on treating various reported symptoms including anxiety and depression related to her history before and during her employment at the Greenacre Farmer's Market.

During her evaluation session, the undersigned expressed a desire to speak with her therapist about her situation. Unfortunately, Ms. Lopez refused to sign a release of information form, which, of course, is her right. However, it was explained to her that the undersigned would find it helpful to speak to her therapist; however she nonetheless declined to sign the release form. As a result, the complainant's therapist was unable to be interviewed.

As part of the present evaluation, Ms. Lopez was asked to explain the details surrounding her alleged abuse at the Greenacre Farmer's Market. She reported a long history of abuse spanning over a 10 year period during two separate employments. Specifically, she reported that her boss would pull her hair and touch her inappropriately. She spontaneously explained that after allegedly being abused by her boss she "began reliving the same thing that happened when I was 8 years old. I was raped by my brother-in-law." When asked if her boss raped her, she stated "he tried to rape me and he took off his pants, but I ran away." When asked where this took place, she stated that it took place at the store in the cooler. She reported that on numerous occasions her boss pushed her against the wall which caused her to become frightened and start crying. When the undersigned asked her if her boss ever touched her breasts, she stated that he did so on many occasions. When asked if he ever touched her bare breasts, she stated "many times." When asked if he ever touched her buttocks, she stated that he did so on many occasions. When asked if he ever touched her bare buttocks, she stated "many times." When asked if her boss ever touched her vaginal area, she stated "yes, very hard." When asked if he ever touched her bare vaginal area, she stated "no, because I wore tight clothes. He tried, but he couldn't." She also stated that in addition to touching her inappropriately, her boss also frequently pulled her hair, pushed her against the wall, ridiculed her, exposed himself to her, and was verbally abusive toward her.

Ms. Lopez explained that she worked for her ex-boss from 2003-2008, and again in 2011-2013. She reported that he abused her during both of those periods of employment on an almost daily basis. When asked why she returned to her employer after being subjected to years of almost daily physical, emotional and sexual abuse, she explained that she wasn't able to find another job. She stated "if I didn't work there I wouldn't have no money and my three children would starve to death." When asked why she did not continue to look for a job after she was rehired by her boss in order to escape the daily abuse, she stated that this was not possible because she had to work at the market from six in the morning until six at night seven days per week. Even with repeated questioning, she insisted that she was never given a single day off during all the years that she worked at the market.

Regarding the complaint that is at the center of the present evaluation, the undersigned asked Ms. Lopez why, after so many years of abuse, did she decide to call the police on that particular day. She stated that on that day her boss noticed a hickey on her neck that had been put there by her boyfriend at the time. As a result, he went to punch her but missed and instead called her a vulgar name. She stated that after this incident, she decided to contact the police on the day of March 11, 2013.

During her evaluation session with the undersigned Ms. Lopez provided information that is inconsistent with information that she provided to other persons including the following:

- Ms. Lopez told the police that her boss never touched her vaginal area, verses informing me that he did do this.

- She told police that she had no boyfriend at the time of the alleged abuse, verses telling me that it was in fact a hickey that her boyfriend put on her neck that angered her employer, resulting in actions against her that caused her to call the police.

- Ms. Lopez told police that a coworker who was a friend of hers could corroborate her story. She was confronted by the undersigned with the fact that her coworker actually

told police that her accusations were untrue, and that she in fact had a tendency to fabricate stories and flirt with male customers, after which she stated that she never told the police that this person was a friend or that he could corroborate her stories. In fact, she then told the undersigned that he was one of her attackers at her former place of employment.

- Ms. Lopez told police that her boss never touched her underneath her clothing, verses telling me that he frequently touched her under her clothing.

**SUMMARY AND CONCLUSIONS:**

The complainant is reporting a variety of traumatic events throughout the course of her life both prior to and during her years of employment at the Greenacre Farmer's Market. Information she has provided is of an inconsistent nature, as outlined above. She declined to grant the undersigned permission to speak with her current therapist, thus limiting this examiner's ability to acquire additional information that may be helpful in better understanding her mental status in general, and specifically as it relates to her alleged abuse at her former place of employment.

Based on all information obtained during the course of the present evaluation, it is the opinion of this examiner that there is sufficient evidence to suggest that this woman is likely fabricating and/or exaggerating the amount of distress she is experiencing as a result of her alleged abuse at her formal place of employment. Further, it is believed that her claim of abuse is in itself somewhat suspect, given the inconsistent nature of her report. Further still, Ms. Lopez reports a traumatic history beginning in childhood that has included very significant physical, emotional, and sexual abuse at the hands of multiple perpetrators. If information provided to this examiner and others regarding said traumatic history is accurate, what, if any, symptoms of a psychological nature that this woman may be experiencing at this time likely stem from a multiple sources.

**COMPENSATION:**

Compensation of $2125.00 to be paid to the examiner for the following services:

- Records Review
- Clinical interview of Ms. Lopez
- Any psychological testing
- Report preparation

Compensation for deposition to be paid in advance at a rate of $250.00 per hour to include:

- Preparation for deposition
- Travel time
- Deposition time, or any part thereof

Compensation for court testimony to be paid in advance at a rate of $250.00 per hour to include:

- Preparation for court testimony
- Travel time
- Court time, or any part thereof

Fausta Santos Aguilar Lopez, Page 6 of 6

## EXPERT WITNESS TESTIMONY IN THE PAST SIX (6) MONTHS:

- State of Florida v. Tavares Shaw (2/21/2014)
- State of Florida v. Charles Slocumb (2/27/2014)
- State of Florida v. Jonathan Felima (3/6/2014)
- State of Florida v. Oge Pierre (4/16/2014)
- State of Florida v. Shawn Harris (4/25/2014)
- State of Florida v. Lewis Hill (5/2/2014)
- State of Florida v. Enock Fleurinor (5/16/2014)

I, Christopher J. Fichera, Ph.D., certify that I personally conducted and prepared this report and that all conclusions reflected are those of this expert and not any third party.

Respectfully Submitted,

Christopher J. Fichera, Ph.D.
Licensed Psychologist
CF/ke

Christopher J. Fichera, Ph.D.
7100 West Camino Real, Suite 123
Boca Raton, Florida 33433

## EDUCATION

1989    University of Miami, Coral Gables, Florida
        Clinical Psychology, Ph.D.

1987    Yale University School of Medicine, Department of psychiatry, New Haven, CT.
        Fellowship in Clinical Psychology.

1981    University of Miami, Coral Gables, Florida
        B.A. Psychology

## CLINICAL AND FORENSIC POSITIONS

2008-2009    Director of Psychological Services, Neurological Rehabilitation Center (NRC), Tamarac, Florida

An out patient rehabilitation program that offers a diverse range of both preventive and restorative services to the workers compensation industry and the general community. Professional team includes licensed and experienced board certified physicians specializing in physical medicine, pain medicine, and orthopedic surgery, as well as physical, occupational and speech therapists. Psychological services include the treatment and evaluation of pain patients, presurgical psychological screening evaluations, and neuropsychological assessments.

2008-Present    President and Clinical Director, Behavioral Health Care Associates, Boca Raton, Florida

A clinical group providing evaluative and treatment psychological services to medical populations including worker's compensation, personal injury, presurgical screening, and pain management, as well as expert testimony in related maters that are litigated.

2000-Present    Psychological Expert for the Broward and Palm Beach County Criminal Courts. Providing psychological evaluations, and expert testimony on both adult and juvenile cases including, Competency to Proceed, Sanity, Mitigating Factors, Downward Departure, Involuntary Commitment, Mental Retardation, Phase-2 Death Penalty, Child Custody, Substance Abuse Assessment, and Guardianship.

1996-Present    Pre-surgical psychological evaluations for more than 500 Reproductive Endocrinology patients undergoing various procedures including, IVF, egg donation, surrogacy, etc.

1990-Present    Administrative & Clinical Director, Christopher J. Fichera, Ph.D., Sharon M. Theroux, Ph.D. & Associates, Boca Raton, Florida

A private clinical group providing comprehensive forensic, behavioral medicine, and mental health services. Staff includes licensed clinical psychologists, forensic psychologists, clinical neuropsychologists, and psychometricians serving both inpatient and out patient populations

as well as providing consulting services to various medical and psychiatric facilities, including Independent Medical Evaluations, and pain management.

1993-1995    Consulting Clinical Psychologist, InterPhase Recovery, Inc., Boca Raton Florida

An extended care substance abuse treatment facility. Responsibilities include weekly group supervision of clinical staff, participation in diagnosis and treatment planning, coordination and/or provision of psychodiagnostic and neuropsychological services.

1992-1995    Consulting Clinical Psychologist, National Recovery Institute, Boca Raton, Florida

An acute and extended care inpatient substance abuse treatment facility. Responsibilities include the supervision of clinical staff, and the coordination and/or provision of comprehensive psychological assessment batteries, psychological screening assessments and neuropsychological services.

1987-1990    Consulting Psychologist, Sunrise Rehabilitation Hospital

An acute medical rehabilitation hospital caring for general rehabilitation diagnoses including pulmonary, orthopedics, stroke, brain injury, spinal cord injury, and pain management. Conducted psychological evaluations and provides psychological treatment services to both adult and juvenile patients.

1983-1992    Director of Adolescent Services and Substance Abuse Program, Clinical Provider Organization, Miami, Margate and Boca Raton, Florida

An out patient non-profit mental health center. Responsibilities included group psychotherapy with adult, adolescent and substance abuse patients, family therapy individual psychotherapy, complete psychodiagnostic assessment at out patient and in patient referrals, neuropsychological screening, comprehensive intake interviews including mental status examinations, clinical liaison to several local and state-wide substance abuse programs, co-director of EAP development, and clinical liaison to Eastern Airlines Employee Assistance Program.

1981-1992    Director of Group Therapy, Center for Family Counseling, Margate, Florida

An out patient non-profit mental health center. Responsibilities included group therapy (adult, adolescent, and parent groups), intake interviews, individual, family and marital psychotherapy, and comprehensive psychodiagnostic assessments.

## MEMBERSHIPS

American Psychological Association

American Psychological Association, Division 41, Psychology-Law Society

## LICENSURE

Florida Psychologist: PY4473

## CERTIFICATION

Florida Forensic Examiner Training

## CONSULTING AND ADVISORY APPOINTMENTS

1996-2000     Prudential Insurance Company, Mental Health Advisory Board Member
              South Florida Region

1993-1996     Fair Oaks Hospital, Governing Board member, Delray Beach, Florida

1995-1996     Mental health Network. Peer Advisor, Board Member, Florida
1995-1997

## PRESENTATIONS

Fichera, C.J. (August 19, 2011). "The Causes and Detection of False Confessions." A presentation to the Major Crimes Division of the Palm Beach County Office of the Public Defender.

Fichera, C.J. (October 22, 2010) "Working effectively with the competent but communication-challenged defendant: techniques for differentiating between incompetency and Pseudo-incompetency, and strategies for overcoming such obstacles." A presentation to the Felony Division of the Palm Beach County Office of the Public Defender.

Fichera, C.J. (May 19, 2010). "Utilization of Research-Driven Psychological & Psychosocial Variables in the Evaluation of the Work-Injured Patient." A presentation to Kelley Kronenberg, Miami Lakes, Florida.

Fichera, C.J. (May 1, 2009). "Psychological Considerations in the Conceptualization, Case Management, and Treatment of Pain Patients." A presentation to Gallagher Bassett, Sunrise Florida.

Fichera, C.J. (February 20, 2009). "An overview of psychiatric, epidemiological, and evaluative issues related to psychological aspects of work-related injuries." A presentation to Palm Beach County Educational Seminar: Boca Raton, FL.

Fichera, C.J. (October 15, 2008). "Psychological Issues and Disorders in Work-Related Injuries." A presentation to Lamorte Burns & Co: Dania, Florida.

Fichera, C.J. (January 27, 2006). "Psychological variables related to the causes and management of profession-related stress." A presentation to the Major Crimes Division of the Palm Beach County Office of the Public Defender.

Fichera, C.J. and Adamse, M.A. (1993). "The psychological aspects of pain management." Presented to the public and hosted by the Boca Raton Out Patient Surgery and Laser Center, Boca Raton, Florida.

Fichera, C.J. (1993). "Psychological factors surrounding adolescent gang membership." Presented to the Parent Teacher Association at Omni Middle School, Boca Raton. Florida.

Fichera, C.J. (1991). "Psychological and neuropsychological assessment of inpatient substance abuse patients." Presented to the clinical Staff of the CARE Unit, Coral Springs, Florida.

Fichera, C.J. (1988). "A basic outline of psychological services within an employee assistance program." Presented to the management of WPLG, Channel 10, at Jackson memorial Hospital, Miami, Florida.

Fichera, C.J. (1986). "Differential diagnostic considerations regarding learning disability and conduct disorder in a substance abuse population: A case study." Presented to the faculty and clinical fellows of Yale University School of Medicine, Substance Abuse Treatment Unit, New Haven, Connecticut.

REFERENCES UPON REQUEST